NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-2216
_____

JAMES MCNAMARA,
                                        Appellant

v.

KMART CORPORATION


_____

On Appeal from the District Court of the Virgin Islands
(D.C. No. 08-cv-00018)
District Judge: Timothy J. Savage
_____

Submitted Under Third Circuit LAR 34.1(a)
May 6, 2010

Before:   SMITH, CHAGARES and JORDAN, *Circuit Judges.*

(Filed: May 14, 2010)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

    This appeal arises out of appellant James McNamara's personal injury lawsuit

against appellee Kmart Corporation ("Kmart").  McNamara's negligence claim was tried

to a jury in the District Court of the Virgin Islands of the United States.  In accordance

with the jury verdict, the District Court entered judgment in favor of McNamara and against Kmart in the amount of $72,000. McNamara appeals certain evidentiary rulings and requests a new trial on damages. Because we write only for the benefit of the parties, we assume familiarity with the facts of this civil action and the proceedings in the District Court. For the following reasons, we will affirm.

## I.    Background

### A.    *Factual Background*

The underlying facts are straightforward. On January 24, 2008, McNamara was walking inside a Kmart store in Fredericksted, St. Croix, when he slipped on feces. As he slipped, he turned to grab onto something to prevent himself from falling. In the course of grabbing onto a stack of paper towels, he twisted and injured his back. He then sued Kmart, alleging that its negligence proximately caused his injuries. After a trial, the jury found that Kmart's negligence was a substantial factor in causing McNamara's injuries and awarded him $72,000 in damages.

### B.    *Evidentiary Rulings*

The jury trial began on March 16, 2009. In advance of the trial, Kmart filed several motions in limine to preclude McNamara from presenting certain evidence at trial. Relevant to this appeal, Kmart argued that the testimony and reports of McNamara's experts Dr. Gary Jett, Susan McKenzie, and Robert Johnson should all be excluded under Rules 702 and 403 of the Federal Rules of Evidence. Dr. Jett, a physiatrist, was offered

2

by McNamara as a treating physician and a medical expert; McKenzie was offered as a vocational rehabilitation expert; and Johnson was offered as an economic expert.

In a written order issued before the trial, the District Court denied Kmart's motion to exclude the testimony of Dr. Jett. At trial, however, the District Court ruled that Dr. Jett could not testify about McNamara's future needs for housekeeping and home maintenance services and grab bars near his toilet and tub, explaining that there was no adequate foundation in his report for such expenses. With regard to McKenzie and Johnson, the District Court ruled in a separate written order that McKenzie was permitted to "opine on the effects of the functional disabilities upon the occupational opportunities of [McNamara]," but was not allowed to "opine on the cost of [McNamara's] future medical and psychological treatment" or "on amounts of [McNamara's] future loss of income and loss of capacity to earn income." (App. at 221.) In the same order, the Court granted Kmart's motion to exclude the testimony and opinion of Johnson. The District Court did not provide explanations for its rulings as to McKenzie and Johnson.

Two other evidentiary rulings are also at issue in this appeal. During the trial, the District Court prevented McNamara from testifying that he only continued to work out of economic necessity and also prevented him from entering his income tax returns and pay stubs into evidence. The District Court did not explain the first ruling, but stated that the tax returns and pay stubs would not be allowed into evidence because they were not relevant to or probative of McNamara's future earnings.

3

After the judgment in favor of McNamara was entered, he filed a timely notice of appeal.

## II.    Discussion[1]

On appeal, McNamara raises several challenges to the District Court's evidentiary rulings.  First, McNamara complains that the Court abused its discretion when it prevented Dr. Jett from testifying about McNamara's future medical, home maintenance, and home modification needs ("life-care needs").  Second, he argues that the Court abused its discretion when it excluded McKenzie's opinion and testimony about his future life-care needs, future lost income, and loss of capacity to earn income.  Third, he contends that the Court abused its discretion by excluding the testimony and opinion of Johnson.  Fourth, he argues that the Court abused its discretion when it prohibited him from testifying that he continued to work out of economic necessity.  And fifth, he asserts that the District Court abused its discretion when it excluded his tax returns and pay stubs.[2]

We review a district court's evidentiary rulings for abuse of discretion.  *McKenna v. City of Philadelphia*, 582 F.3d 447, 460 (3d Cir. 2009); *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008).  Here, Kmart filed motions in limine to have the opinions

---

[1] The District Court exercised diversity jurisdiction pursuant to 28 U.S.C. § 1332.  We have jurisdiction pursuant to 28 U.S.C. § 1291.

[2] By a Notice of Withdrawal dated February 22, 2010, McNamara withdrew all arguments related to the District Court's failure to conduct hearings pursuant to *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

4

and testimony of Dr. Jett, McKenzie, and Johnson excluded under Rules 702 and 403 of the Federal Rules of Evidence.  Rule 702 permits expert testimony when "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."  Fed. R. Evid. 702.  We have observed that "Rule 702 has three major requirements:  (1) the proffered witness must be an expert, i.e., must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge; and (3) the expert's testimony must assist the trier of fact." *Pineda*, 520 F.3d at 244.  "A trial judge acts as a gatekeeper to ensure that any and all expert testimony or evidence is not only relevant, but also reliable."  *Id.* at 243 (internal citations and quotations omitted).

For its part, Rule 403 allows a district court to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Fed. R. Evid. 403.  "A trial judge's decision to admit or exclude evidence under [Rule 403] may not be reversed unless it is arbitrary and irrational."  *McKenna*, 582 F.3d at 461 (internal citations and quotations omitted).

A. *Dr. Jett's Testimony As To McNamara's Future Medical Needs And Future Life-Care Needs*

Although McNamara complains that the Court erred by excluding "all testimony related to [his] future medical needs" (Appellant's Br. 37), that contention is not supported by the record. The District Court allowed Dr. Jett to testify about McNamara's future medical needs, including his future needs for physical therapy, physical therapy evaluations, orthopedic evaluations, physiatrics evaluations, medication, and future diagnostic testing. Dr. Jett provided testimony as to the approximate cost for each treatment or evaluation and the frequency with which McNamara would need them. Thus, Dr. Jett was permitted to testify about McNamara's future medical needs, and we see no error in the District Court's decision.[3]

Second, McNamara argues that the District Court erred by excluding Dr. Jett's testimony regarding his future life-care needs. The District Court explained that it refused to allow Dr. Jett to testify as to those future needs because there was no support in his report for such expenses. In the report, Dr. Jett stated that McNamara would need a

---

[3] In the argument sections of his briefs, McNamara does not specify which future medical need the District Court erroneously excluded testimony on, but his opening brief could be read to argue that the Court erred by excluding Dr. Jett's testimony as to McNamara's future need for lumbar surgery. (Appellant's Br. 7, 16.) If that is McNamara's argument, we see no abuse of discretion. First, McNamara has not identified where in the record the District Court ruled that Dr. Jett could not testify about McNamara's need for lumbar surgery. Second, Dr. Jett referred McNamara to an orthopedic surgeon, Dr. Chase, for evaluation, but McNamara apparently withdrew Dr. Chase as a witness before trial and has not directed us to any reliable basis for Dr. Jett's determination that McNamara would require lumbar surgery in the future.

6

housekeeper for four hours per week for the next ten years of his life, help with home maintenance once a month for ten years, and the installation in his home of grab bars in his tub and a raised toilet seat with grab bars. The report, however, does not state why these expenses were necessary as a result of McNamara's injuries. Although McNamara argues that his own trial testimony established that these expenses were necessary, his testimony does not obviate the requirement in Rule 702 that expert opinions be based on sufficient facts. Thus, the District Court did not abuse its discretion by excluding the evidence under Rule 702 based on its conclusion that the recommendations were not adequately supported by Dr. Jett's reported medical findings.

B.      *McKenzie's Opinion And Testimony Regarding Future Life-Care Needs, Future Loss Of Income, And Loss Of Capacity To Earn Income*

McNamara argues that the District Court abused its discretion by limiting the scope of McKenzie's opinion and testimony with regard to McNamara's future life-care needs, future loss of income, and loss of capacity to earn income. The District Court entered the order limiting McKenzie's testimony after the parties fully briefed Kmart's motion in limine to exclude her opinion and testimony under Rules 702 and 403. In the motion in limine, Kmart argued that McKenzie's opinion with regard to McNamara's future medical and life-care needs was outside the scope of her expertise and that her conclusions as to McNamara's loss of income and loss of capacity to earn income would not be useful to the jury. Although the District Court did not explain its reasons for limiting McKenzie's testimony to her opinion "on the effects of the functional disabilities

7

upon the occupational opportunities of [McNamara]," we believe its reasoning is apparent from the record.

First, McKenzie's opinion and testimony as to McNamara's future life-care needs was properly excluded. That proposed testimony was based entirely on Dr. Jett's report. Because the District Court found that those aspects of Dr. Jett's opinion were not based on sufficient facts, McKenzie's testimony on the same subjects was also necessarily excluded.

The Court also acted within its discretion when it precluded McKenzie from testifying to the "amounts of [McNamara's] future loss of income and loss of capacity to earn income." (App. at 221.) Importantly, McKenzie's report did not specify the amount of McNamara's future loss of income or otherwise quantify his loss of capacity to earn income. Instead, McKenzie's report stated that McNamara worked at a "sedentary office job" and that "his job tasks fit within [his] physical limitations." (App. at 101.) And, although her report states that McNamara was concerned about his productivity, it does not indicate that he was unable to perform his job as a result of the injuries. Furthermore, McKenzie evaluated McNamara's loss of income and work capacity and found that "McNamara is not currently experiencing lost wages. He is currently working within his physical restrictions and therefore, hopefully can remain in his high paying job with the Government." (App. at 102.) McKenzie's report did not include any information about other employment opportunities that might be available to someone with McNamara's

8

skills and limitations or about the relevant labor market. Because there was no basis in her report for any opinion on the amounts, if any, of McNamara's future loss of income and loss of capacity to earn income, McKenzie's testimony on those subjects was properly excluded under Rule 702.

McNamara also argues that the District Court erred by excluding other evidence he wanted to offer about his future loss of income and loss or impairment of earning capacity. The record does not support such an argument. At trial, McNamara testified that working caused him additional pain and that he was concerned about whether he could continue to work and provide for his family. Dr. Jett testified that McNamara had difficulty working because of the pain he experienced after sitting for lengthy periods of time. McKenzie also testified as to McNamara's physical limitations and the effect those limitations would have on his labor opportunities. During her direct examination, she was asked if McNamara's "ability to get and obtain employment changed since the accident[.]" (App. at 510.) She answered, "Yes. Definitely. When a person ... such as McNamara has[] functional disabilities ... it basically affects their ability to be able to walk out into the labor market and into another job that ... he might have been able to perform prior to this injury." *Id*. Thus, the record shows that McNamara was allowed to present evidence as to his future loss of income and loss or impairment of earning capacity, and, accordingly, we find no error.

C.    *Johnson's Expert Testimony And Opinion*

Next, McNamara argues that the District Court abused its discretion by excluding the opinion and testimony of Robert Johnson. Again, we disagree. Before the District Court, Kmart argued that Johnson's testimony should be excluded under Rule 403 as a waste of time and under Rule 702 as unhelpful to the jury. In his report, Johnson summed up McNamara's future medical and non-medical expenses, as reported by McKenzie, and calculated the present value of those expenses. The District Court did not err in prohibiting McKenzie from testifying about McNamara's future medical and non-medical expenses.[4] Because McKenzie was not permitted to testify about these expenses, Johnson's testimony, which was dependent on McKenzie's, was also properly excluded.

D.    *Evidence That McNamara Worked Despite His Pain And Because of Economic Necessity*

McNamara also argues that the Court erred by excluding his testimony that he continued to work while in pain out of economic necessity. Although the Court did not explain its decision to exclude this testimony, we conclude that, if it were error, it would certainly be harmless. *See Great Am. Ins. Co. v. Norwin School Dist.*, 544 F.3d 229, 251 (3d Cir. 2008) ("An erroneous evidentiary ruling will be considered harmless if it is highly probable that the district court's [ruling] did not affect [the party's] substantial

---

[4] On appeal, McNamara does not challenge the portion of the District Court's order preventing McKenzie from testifying as to McNamara's future medical needs. We think it is clear that McKenzie, a vocational rehabilitation expert, was not qualified to opine as to these needs.

10

rights." (internal citations and quotations omitted)). During the trial, McNamara was permitted to testify that he frequently had to get up from his desk to relieve his pain and that working exacerbated his back pain. In the context of his answers on the pain he experienced during work, he was asked if he thought about "stopping work." (App. at 349.) He answered, "If I could, I would." *Id.* McNamara's attorney further explained his testimony during the closing, stating, "He's got the whip of economic necessity. He doesn't have the money not to be able to work ... . [Y]ou heard him, if he had the ability not to be able to work, he would stop, because of the pain." (App. at 703.) Given McNamara's testimony and his counsel's subsequent argument, a reasonable jury would understand that McNamara continued to work in order to maintain his income. We find no reversible error.

E.    *Tax Returns And Pay Stubs*

Finally, McNamara argues that the District Court erred by preventing him from introducing his tax records and pay stubs into evidence. Again, if this were error, it was also harmless because the jury was repeatedly informed of McNamara's salary during the trial. First, McNamara testified at trial that he was making $70,500 per year on the date of the incident at Kmart. Second, McKenzie also testified about the approximate amount of McNamara's salary at the time of the accident and at the time of trial. Third, McNamara's attorney informed the jury during her closing argument of the amount of McNamara's salary at the time of trial. Thus, the jury was fully aware of the amount of

McNamara's income, and McNamara was not harmed by the District Court's decision to exclude this evidence.

### III.     Conclusion

Finding no error in the District Court's evidentiary decisions, we will affirm the order of the District Court.